## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

JANELL BYARS                                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:19-CV-660-KHJ-JCG

ASBURY MANAGEMENT SERVICES, *et al.*                        DEFENDANTS

### <u>MEMORANDUM OPINION AND ORDER</u>

BEFORE THE COURT are multiple motions filed by the parties. Plaintiff filed a Motion for Protective Order. ECF No. 69. Defendant filed a Motion to Take Deposition from Plaintiff and Motion to Compel Plaintiff to Provide a HIPPA Release. ECF No. 75 & 77. Having considered the submissions of the parties and applicable law, the Court finds that the [69] Motion for Protective Order is denied for mootness, [75] Motion to Take Deposition from Plaintiff is granted, and [77] Motion to Compel Plaintiff to Provide a HIPPA Release is denied for mootness.

### BACKGROUND

On or about September 2015, Plaintiff Janell Byars ("Byars") began working for Defendant Asbury Management ("Asbury") at its Gray-Daniels Nissan North dealership in Canton, MS. ECF No. 1 at 4. On or about February 2017, Byars transferred to Gray-Daniels Ford Lincoln dealership in Brandon, MS. *Id.*

Starting in April 2017, Byars alleges that Asbury employee Jason Massey ("Massey") began sexually harassing Byars and subjecting her to a sexually hostile work environment. *Id.* at 5. Byars specifically alleges that Massey subjected her to various forms of verbal/nonverbal and physical sexual harassment. *Id.* Byars asserts

that she reported the sexual harassment to her supervisors and other female co-workers at the dealership. *Id*. Byars alleges that Asbury took no corrective or preventive actions despite being informed of the sexual harassment. *Id*. at 6-8.

In mid-November 2017, Byars alleges that she was transferred to the used car building across the street from the main building at the Brandon, MS dealership. *Id*. at 8-9. Byars alleges that beginning in February 2018, Asbury cut her pay, eliminated several of her benefits, demoted her to the position of service cashier, and moved her back into the same building where Massey worked. *Id*. at 9.

Byars represents that in May 2018, because of the ongoing sexual harassment, she was "forced to resign from Gray-Daniels Ford Lincoln and was thereby constructively discharged by Asbury." *Id*. at 10.

On September 12, 2019, Byars filed a sexual harassment suit alleging federal and state law claims. ECF No. 1. Byars complaint alleges the following claims: (1) violation of Title VII- Sexual Harassment/Hostile Work Environment, (2) Violation of Title VII- Retaliation, (3) Sexual Assault/Battery (employer liability), (4) Negligence-hiring, training, supervision, and retention, and (5) Intentional and Negligent Infliction of Emotion Distress.

## DISCUSSION

I. Motion for Protective Order [69]

Byars filed a Motion for Protective Order Prohibiting *Ex Parte* Contact, Sanctions, and an Award of Attorney Fees. ECF No. 69. Byars' motion alleges that Defendant's attorney, Steven Cupp ("Cupp"), had multiple *ex parte* communications

with her treating psychologist, Sherri Kent. *Id*. at 3. Asbury responded in opposition, stating that no waiver of medical privilege was being sought and there were "no improper *ex parte* communications by Defense counsel with Ms. Kent." ECF No. 71 at 4.

After reviewing the parties' submissions and accompanying exhibits the Court finds that Byars' Motion for a Protective Order is moot. When advised of the alleged improper *ex parte* communications, Mr. Cupp responded to Plaintiff's Counsel via email, stating, "I was thinking that I was not engaged in any *ex parte* communications with a medical provider over specific treatment and/or diagnosis." ECF No 71-9 at 1. Mr. Cupp further stated, "[o]f course, I will not have any further contact with Ms. Kent unless or until her deposition, if that is even necessary." *Id*.

Considering Mr. Cupp's representation that he will not contact Dr. Kent outside of her potential deposition, the Court finds that the Motion for a Protective Order should be denied for mootness.

II. <u>Motion to Take Plaintiff's Deposition [75]</u>

The Court now turns to Asbury's request to reopen Byars' deposition in light of the discovery of numerous text messages between her and Massey. ECF No. 75. Asbury adds that the 329 pages of text messages recovered from Massey's phone are directly relevant to the sexual harassment allegations. ECF No. 76 at 3. Further, Asbury argues that the "text messages are directly relevant regarding Plaintiff's relationship with Mr. Massey and should be considered new information that Defense counsel was previously unable to ask Plaintiff about during her first deposition." *Id*.

3

Conversely, Byars' asserts that Asbury has not shown the requisite good cause to warrant reopening Byars' deposition. ECF No. 81 at 6. Byars adds that Asbury "had ample opportunity to obtain Massey's text messages well before Byars' second deposition, but failed to do so." *Id*.

Unless both parties stipulate otherwise, a party seeking to reopen the deposition of a witness that has already been deposed in the case must obtain leave of court. Fed. R. Civ. P. 30(a)(2)(A)(ii). A court must grant leave to the extent it is consistent with Rules 26(b)(1) and (b)(2). *Id*. Rule 26(b)(1) provides that the scope of discovery should be limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rule 26 (b)(2) requires a court to limit the frequency and extent of discovery if it finds that "(1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(1)(C). Consequently, some courts have denied leave to take a second deposition where a party lacked diligence

in obtaining information before the initial deposition. *Kleppinger v. Tex. Dep't of Transp.*, 283 F.R.D. 330, 333 (S.D. Tex. 2012) (citing *Fresenius Med. Care Holdings, Inc. v. Roxane*, 2007 WL 754302, at *2 (S.D. Ohio March 9, 2007)).

Courts have allowed parties to reopen depositions when "new information comes to light," creating the need for further questioning. *Kleppinger*, 283 F.R.D. at 333. "New information" can include the addition of new parties to the case, the addition of new allegations to the pleadings, and the production of new documents. *Id.* at 333 n.3 (collecting cases). If a deposition is reopened because of newly discovered information, the court should limit the deposition to questions related to this information. *Id.* (citing *Ganci v. U.S. Limousine Serv., Ltd.*, 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011)).

Byars alleges that Asbury had ample opportunity to obtain the text messages by discovery. ECF No. 81 at 6. However, Byars admits that "the text messages between Massey and Byars were revealed after [Byars' and Massey's] depositions." *Id.* at 7. In response, Asbury's counsel asserts that by the time it received notice that Byars had filed an EEOC charge, Massey no longer worked for Asbury, and it was not possible for counsel to "ask, much less require" Massey to turn over his messages. ECF No. 83 at 2.

The fact remains that this case centers on allegations of sexual harassment and a hostile work environment. Byars explicitly alleges that "[t]he inappropriate text messaging and stalking by Massey against Plaintiff continued throughout." ECF No. 1 at 10. However, Asbury asserts that in response to their request to produce

documents, Byars produced screenshots of only two text messages. ECF No. 76 at 1. In response to Asbury's second set of interrogatories, Byars stated that she could not recover the text messages from the relevant time. *Id*. at 2. Further, during her deposition, Byars testified that she no longer had the phone in use during the relevant time and did not preserve any of the messages. *Id*. at 1-2. However, when Byars' counsel deposed Massey, Massey testified that he had all of the messages between he and Byars and allowed Byars' counsel to extract them from his phone. *Id*. Nevertheless, when Asburys' counsel requested that the messages be read on the record, Byars' counsel responded, "I'm not paying for all of this . . ." ECF No. 83 at 2.

Here, the Court finds that the 329 pages of new text messages that Byars' counsel recovered from Massey's phone constitute "new information." Given that Byars' claims center around both the alleged verbal/nonverbal communications from Massey, the Court finds that deposing Byars regarding the text messages is necessary to resolve the central issue in dispute in this matter. The Court further finds that the importance of allowing Asbury to depose Byars regarding the text messages outweighs the burden or expense of the proposed discovery. Additionally, the Court finds that the discovery request is not "unreasonably cumulative or duplicative," or "outside the scope permitted by Rule 26(b)(1)." *See* Fed. R. Civ. P. 26(b)(2).

For these reasons, the Court finds that the Motion to Reopen Byars' deposition should be granted. The deposition's scope of questioning is limited to the 329 pages of downloaded text messages.

III. <u>Motion to Compel Plaintiff to Provide a HIPPA Release [77]</u>

Finally, the Court turns to Asbury's Motion to Compel Byars to Provide a HIPAA Release. ECF No. 77. Asbury specifically requests that the Court "require the Plaintiff provide another HIPAA release so that Defense counsel can issue a subpoena for Plaintiff's medical records and depose Plaintiff's medical providers if necessary." *Id.*

In response, Byars represents that she "has no issue with executing a new HIPPA authorization that is specifically restricted to obtaining medical records/information through the proper course of a deposition or a subpoena duces tecum, and guarantees are provided to prohibit any further *ex parte* contact by Defense Counsel with Byars' medical providers." ECF No. 79 at 2.

Because Byars agreed to execute a new HIPPA agreement, the Court finds that Asbury's Motion to Compel is moot. However, if Byars fails to execute a new HIPPA authorization within fourteen (14) days of the Court's Order, then Asbury may re-file its Motion to Compel.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Plaintiff's Motion for Protective Order [69] is denied for mootness.

**IT IS FURTHER ORDERED** that Defendant's Motion to Take Plaintiff's Deposition [75] is granted.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel [77] is denied for mootness. If, however, Plaintiff fails to execute a new HIPPA authorization within fourteen (14) days of the Court's Order, Defendant may re-file its Motion.

**SO ORDERED AND ADJUDGED**, this the 19th day of July 2021.

7

*s/ John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE